UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

W.R. GRACE & CO. — CONN.,

                            Plaintiff,

        v.                                          **DECISION AND ORDER**

ZOTOS INTERNATIONAL, INC.,                          98-CV-838S(F)

                            Defendant.

## I. INTRODUCTION

Plaintiff W.R. Grace & Co.-Conn. ("Grace") is the current owner of a parcel of property on Brewer Road in Waterloo, New York ("Brewer Road Site" or "Site") where hazardous waste was deposited some fifty years ago.  Grace commenced this action on December 30, 1998, pursuant to section 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), the Declaratory Judgment Act, 28 U.S.C. § 2201, and New York law, seeking contribution from Defendant Zotos International, Inc. ("Zotos") for costs incurred in connection with Grace's investigation and remediation of contamination at the Site.

A non-jury trial on the issue of liability was held before this Court on May 17, 19, 20, 21, 24, 25 and 26, 2004.  The parties introduced almost four hundred exhibits and each offered lay and expert witness testimony.  Following the trial, each party submitted a post-hearing brief, a responding brief, and a brief on the evidentiary issues raised at trial.  Each party also prepared proposed findings of fact and conclusions of law for the Court's consideration.

1

On December 15, 2004, Zotos filed a Notice of Recent Decision of the United States Supreme Court in Cooper Industries, Inc. v. Aviall Services, Inc., ___ U.S. ___, 125 S. Ct. 577, 160 L. Ed. 2d 548 (Dec. 13, 2004), and requested that the parties be given the opportunity to brief the significance of Cooper to the liability issues in this case.  Grace joined in Defendant's request by filing a Motion for Supplemental Briefing on Liability Issues.  The requests were granted and each party has submitted a supplemental brief and reply brief.

Rule 52 of the Federal Rules of Civil Procedure provides, in pertinent part, that "in all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon."  FED. R. CIV. P. 52(a).  Because the parties' post-trial briefing raises fundamental questions of law regarding Grace's ability to maintain a claim against Zotos, the outcome of which may be determinative here, this Court will first address those questions.

## II.  BACKGROUND

Grace acquired the Brewer Road Site on or about December 28, 1978, when it purchased the assets of Evans Chemetics, Inc. ("ECI"), a chemical manufacturer.  (Docket No. 108, p. 3[1]; No. 136, ¶¶20-21; J. Ex. 163[2]).  ECI had used the Brewer Road Site as a dumping ground for waste from a manufacturing facility in Waterloo, New York (the "Waterloo Plant") during the period 1950 through 1959 (the "Disposal Period").  (Docket

---

[1]  Docket No. 108 is a Decision and Order filed by this Court on September 30, 2003, which resolved the parties' respective summary judgment motions.

[2]  The trial exhibits are identified as either a Joint Exhibit ("J. Ex."), Plaintiff's Exhibit ("P. Ex.") or Defendant's Exhibit ("D. Ex.").

No. 108, p. 2; No. 136, ¶¶13,19; J. Exs. 122; 123; 124, p. 4; 152, p. 4).

During the Disposal Period, ECI manufactured a variety of organic compounds at the Waterloo Plant, some of which were used in the formulation of hair care products. (J. Ex. 152, p. 4; P. Ex. 383, p. 1). ECI also formulated and packaged hair care products for sale to Zotos, as well as to other distributors and customers. (Docket No. 136, ¶33; P. Ex. 385, p. 3).

In 1983, the New York State Department of Environmental Conservation ("DEC") retained an environmental consultant to conduct a Phase I preliminary investigation of the Site. (Docket No. 136, ¶¶51-52; P. Ex. 383).    Among the materials observed at the Site were bottles and plastic tubes for hair care products, some of which bore Zotos' product labels. (P. Ex. 383, p. 7; P. Ex. 385, pp. 1-2; *see also,* Williams Dep. at 70:9-71:2; Tr. at 67-70).

In 1984, Grace entered into an Administrative Order on Consent with the DEC for a Phase II investigation at the Site (the "1984 Consent Order"). (Tr. at 76-77; P. Ex. 386, p. 2). On or about September 28, 1988, Grace entered into another Order on Consent with the DEC, pursuant to which Grace was to develop and implement a remedial investigation, feasibility study, and, if necessary, a remedial program for the Site (the "1988 Consent Order"). (Docket No. 108, p. 3; No. 136, ¶53; P. Ex. 384). In 1993, Grace constructed the remedy set forth by the DEC. (Tr. at 84-87). According to Grace, through April 2004, it expended approximately 1.7 million dollars on investigation and remediation activities at the Site. (Tr. at 86-87).

In its Amended Complaint in this action, filed in November 2000, Grace seeks

contribution from Zotos, pursuant to 42 U.S.C. § 9613(f)[3], on the ground that Zotos arranged to have various hazardous substances that it owned or possessed disposed of at the Brewer Road Site, and is therefore a responsible party liable under CERCLA. (Docket No. 38, ¶ 28).  Alternatively, Grace seeks contribution pursuant to N.Y. C.P.L.R. § 1401 and state common law.  (*Id.*, ¶¶ 35-36).

### III.  DISCUSSION AND ANALYSIS

**A.**    **Grace's Contribution Claim under CERCLA section 113(f)(1)**

CERCLA section 113(f)(1) provides, in relevant part, that:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, *during or following any civil action* under section 9606 of this title or under section 9607(a) of this title.

42 U.S.C. § 9613(f)(1) [emphasis supplied].[4]

In Cooper Industries, Inc. v. Aviall Services, Inc., ___ U.S. ___, 125 S. Ct. 577, 160 L. Ed. 2d 548 (Dec. 13, 2004), the Supreme Court held that a private party who has not itself been sued under CERCLA section 106 (an abatement action) or section 107(a) (a cost recovery action) may not obtain contribution from other liable parties under section 113(f)(1).  *Id.*, pp. 583-586.

The Amended Complaint does not allege, nor has Grace ever argued, that it was subject to either of the civil actions specified in section 113(f)(1).  Thus, Cooper is dispositive on the issue of section 113(f)(1) liability here, and Grace does not argue

---

[3]  While the Amended Complaint cites generally to 42 U.S.C. § 9613(f), Count I quotes from subsection (1) in identifying the basis for the requested relief.  (Docket No. 38, ¶ 22).

[4]  CERCLA is codified at 42 U.S.C. §§ 9601 *et seq.*

otherwise.  As Zotos correctly contends, section 113(f)(1) does not authorize Grace's suit against it.

## B.  Grace's Purported Contribution Claim under CERCLA section 113(f)(3)(B)

The Supreme Court noted in Cooper that CERCLA section 113 provides two distinct avenues by which a plaintiff may seek contribution, the first being section 113(f)(1).  The second avenue, section 113(f)(3)(B), provides that: "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in [CERCLA 113(f)(2)]."[5]  Section 113(f)(2) states, in relevant part, that: "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."  In other words, a party that has settled its liability under CERCLA may bring a CERCLA contribution action against a non-settling party and is also protected from any contribution claims made by others relative to the site that is the subject of the settlement.

In its supplemental brief, Grace asserts that its right to seek contribution from Zotos is not adversely affected by the decision in Cooper regarding section 113(f)(1). Specifically, Grace urges that "in the instant case, Grace seeks contribution pursuant to CERCLA § 113(f)(3)(B) because Grace has resolved its liability to the State of New York in two administratively approved settlements for response costs and the response actions

---

[5]  In the Superfund Amendments and Reauthorization Act of 1986 ("SARA") Congress amended CERCLA to, among other things, create a right of contribution in the event of settlement.  Pub. L. No. 99-499, 100 Stat. 1613 (1986).

at the Brewer Road landfill." (Docket No. 200, p. 3).

At no time prior to this most recent round of post-trial briefing has Grace sought to premise recovery on section 113(f)(3)(B).[6]  However, the Second Circuit has held that the failure "to cite a statute, or to cite the correct one, in no way affects the merits of the claim." Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (motion to dismiss); *see also*, Newman v. Silver, 713 F.2d 14, 16 n.1(2d Cir. 1983) (federal pleading is by statement of claim, not by legal theories) (*citing* Gins v. Mauser Plumbing Supply Co., 148 F.2d 974, 976 (2d Cir. 1945) ("particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled [after trial], whether demanded or not")). Thus, irregardless of Grace's failure to specifically identify section 113(f)(3)(B) as a basis for recovery, this Court will consider whether Grace has proven that it is entitled to relief under that provision.

Zotos contends that Grace does not have a contribution claim under section 113(f)(3)(B) for two reasons: (1) the 1988 Consent Order does not qualify as an "administrative settlement" within the meaning of section 113(f)(2)[7]; and (2) even if it did, any contribution claim would be subject to a three-year statute of limitations and therefore

---

[6]  The initial Complaint in this action cited generally to section 113 and then specifically quoted from section 113(f)(1).  (Docket No. 1, ¶¶ 1, 20).  In its motion to amend the Complaint, Grace confirmed that it was premising its CERCLA claim on section 113(f)(1).  (Docket No. 14, p. 7).  Grace filed a motion for partial summary judgment on the issue of Zotos' liability on June 14, 2000, stating that it "brings this action pursuant to Section 113(f)(1) of CERCLA."  (Docket No. 26, p. 1).  Grace's Amended Complaint, filed on November 9, 2000, again quotes from section 113(f)(1), making no reference to 113(f)(3)(B).  (Docket No. 38, ¶¶ 1, 22).  Grace filed a further motion for partial summary judgment on the issue of Zotos' CERCLA liability on December 2, 2002, again stating that it "brings this action pursuant to Section 113(f)(1) of CERCLA."  (Docket No. 68, p. 1).  In its post-trial brief, Grace stated that it "brings this action against defendant Zotos . . . pursuant to Section 113(f)(1) of [CERCLA]," once again making no mention of 113(f)(3)(B).  (Docket No. 185, p. 1).

[7]  Zotos does not address the 1984 Consent Order.

is barred.[8]  While neither party has engaged in statutory analysis, this Court must first look to CERCLA's settlement scheme and determine how a party such as Grace settles its liability to the United States or a State within the meaning of section 113(f)(3)(B).

### A.    The CERCLA Cleanup Process

CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), was enacted to ensure the efficient cleanup of sites contaminated with hazardous wastes and other pollutants.  The CERCLA cleanup process is carried out under sections 104, 106, 120[9], 121 and 122 of the Act.

CERCLA authorizes the President[10] to take a variety of measures when "any hazardous substance is released or there is a substantial threat of such a release into the environment."  42 U.S.C. § 9604(a).  Section 104 of CERCLA authorizes the EPA to use funds from the Hazardous Substance Superfund ("Superfund" or "Fund") to clean up a hazardous waste site, after which the EPA may institute a civil action, under section 107, to recover the costs of cleanup from responsible parties.  Alternatively, the EPA may, under section 106, issue an administrative order or seek a court order directing a potentially responsible party ("PRP") to clean up a site.  Sections 122(g) and (h) authorize the EPA to enter into settlements with PRPs regarding certain claims under sections 106

---

[8]  This action was commenced ten years after Grace entered into the 1988 Consent Order.

[9]  Section 120 addresses the applicability of CERCLA to facilities owned or operated by the federal government and is not relevant to this case.

[10]  In Executive Orders 12580, 52 Fed. Reg. 2,923(1987), and 12,777, 56 Fed. Reg. 54,757 (1991), the President delegated certain functions and responsibilities vested in him by CERCLA, as amended, to the Administrator of the United States Environmental Protection Agency ("EPA").  Where appropriate, further references will be to the EPA..

and 107.[11]

Where the EPA determines that the owner or operator of the facility in question, or another PRP, can properly and promptly carry out the appropriate response measure[12], the EPA may enter into a settlement agreement with that party relative to the cleanup, pursuant to section 122.  *See* 42 U.S.C. § 9604(a).  All  settlements involving remedial action by a PRP under section 106[13], exclusive of *de minimus* settlements, must be approved by the Attorney General and must be "entered in the appropriate United States district court as a consent decree." 42 U.S.C. § 9622(d)(1)(A).  *See* New York v. Exxon Corp., 697 F. Supp. 677, 691 (S.D.N.Y. 1988) (a settlement in which a PRP agrees to do the cleanup work must be entered as a consent decree and is subject to mandatory judicial review).

Although the EPA is the federal agency designated to implement and oversee CERCLA, section 104 expressly provides that certain CERCLA authority may be delegated to the states:

> A State . . . may apply to the [EPA] to carry out actions authorized in this section.  If the [EPA] determines that the State . . . has the capability to carry out any or all of such actions in accordance with the criteria and priorities established pursuant to section 9605(a)(8) of this title and to carry out

---

[11]  Section 122(g) authorizes the EPA to enter into *de minimus* settlements under sections 106 or 107 where an administrative or civil action has already been commenced.  Section 122(h) authorizes the settlement of certain cost recovery claims under 107 where the claim has not yet been referred to the Department of Justice for suit.

[12]  Response measures may be either "removal" actions or "remedial" actions. 42 U.S.C. § 9601(25).  Removal actions are intended to prevent or minimize any immediate risks posed by the release of hazardous substances, while remedial actions are intended to be permanent remedies taken instead of or in addition to removal actions.  42 U.S.C. §9601(23) and (24).

[13]  As already noted, remedial actions under section 106 are secured from a PRP, whereas those under 104 are provided by the Federal government.

related enforcement actions, the [EPA] may enter into a contract or cooperative agreement with the State . . . to carry out such actions. The [EPA] shall make a determination regarding such an application within 90 days after the [EPA] receives the application.

42 U.S.C. § 9604(d)(1)(A).  In other words, a State that wishes to carry out actions authorized by CERCLA must make application to, and enter into a contract or cooperative agreement with, the EPA.  Absent an express delegation by the EPA, a state has no CERCLA authority.  However, where a state receives such delegation, its actions taken pursuant to the cooperative agreement are on behalf of the Federal government.  *Id*., § 9604(d)(3).  Cooperative agreements and the delegation of CERCLA authority are specific to one or more facilities.  *Id*, § 9604(d)(1)(B).

Actions authorized in section 104 which may be delegated to a state include: providing for the removal or remediation of hazardous substances and any other response measure deemed necessary to protect the public health or welfare or the environment, consistent with the national contingency plan[14], § 9604(a)(1); underlined entering into settlement agreements pursuant to section 122, *Id*.; investigating and inspecting the site of a release or threatened release, § 9604(b)(1) and (e)(2)-(4); selecting a remedial action, § 9604(c)(4); and taking related enforcement actions, which presumably include cost recovery, §9604(d)(1)(A).  The delegation of authority in a cooperative agreement may also extend to the settlement of claims against the Superfund.  *Id*., § 9611(f).  In each

---

[14]  All CERCLA cleanup decisions are guided by the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), which, among other things, prescribes methods for investigating environmental problems resulting from a release or threatened release of hazardous substances, establishes criteria for determining the appropriate extent of response activities authorized by CERCLA, and defines the roles and responsibilities for the Federal and State governments in effectuating the NCP. 42 U.S.C. §§ 9605(a) and 9621(f); 40 C.F.R. Part 300.

instance, however, the EPA has full discretion to determine whether, and the extent to which, CERCLA authority will be delegated to a state.  *Id*., § 9604(d)(1)(B).

It is pursuant to these cooperative agreements that a state also assumes certain CERCLA responsibilities and costs.  42 U.S.C. § 9604(c)(3).

The NCP regulations pertaining to state involvement in CERCLA response actions are found at Subpart F, 40 C.F.R. §§ 300.500-300.525.   In cleanups financed by the Superfund, the EPA and the state in which the site is located work together pursuant to a cooperative agreement or contract, with one acting as the lead-agency and the other as the support-agency.  *Id*., § 300.515(a)(1).  The EPA has also determined it is appropriate to enter into a cooperative agreement or contract where a state intends to seek credit, pursuant to CERCLA section 104(c)(5), for its own non-Fund-financed response actions. *Id*., § 300.515(a)(3).   Indeed, the EPA encourages states to "enter into cooperative agreements pursuant to sections 104(c)(3) and (d) of CERCLA to enable them to undertake actions authorized under subpart E [Hazardous Substance Response] of the NCP." 40 C.F.R. § 300.180(e) [emphasis supplied].

However, the regulations do not provide for cooperative agreements or contracts in state-funded or state-lead PRP cleanups where no CERCLA credit is sought.  *Id*., § 300.515(a)(3), *see also*, § 300.515(e)(2)(ii) (the EPA need not concur in a state's selection of a remedy at a non-Fund-financed state-lead enforcement site under state law).  Where a state proceeds on its own authority to identify a remedy and settle with a PRP, there is a risk that the EPA will take later actions or select different remedies that could expose the PRP to additional liabilities.  *See* State of Ohio v. United States EPA, 997 F.2d 1520, 1541

(D.C. Cir. 1993).  This possibility is expressly set forth in CERCLA's abatement provision: "[i]n addition to any other action taken by a State or local government, . . . [the President] may require the Attorney General of the United States to secure such relief as may be necessary . . .."  42 U.S.C. § 9696(a) [emphasis supplied].

The State of New York has its own mechanism, independent of CERCLA, by which to engage in cleanup and enforcement actions.  It has enacted legislation that parallels CERCLA's provisions for the cleanup of inactive hazardous waste sites, and has established a hazardous waste remedial fund to be used for, among other things, the identification and investigation of inactive hazardous waste sites, remedial programs and cleanups under state law, and the state's share of costs in CERCLA cleanups.  *See*, N.Y. Envtl. Conserv. Law §§ 27-1301 *et seq.;* N.Y. State Fin. Law, § 97-b.

While states may choose to act either in cooperation with the EPA or independently to remediate inactive hazardous waste sites, "[s]ection 113(f)(2) clearly contemplates a settlement over *CERCLA* liability." CPC International, Inc., 759 F. Supp. 1269, 1283 (W.D. Mich. 1991) [emphasis in original]; *see also*, Elementis Chemicals, Inc. v. T H. Agric. and Nutrition L.L.C., 03 Civ. 5150, 2005 U.S. Dist. LEXIS 1404, at *20 (S.D.N.Y. Jan. 31, 2005) ("any person who has settled with the United States or a State *regarding its CERCLA liability* may seek contribution from any other person who has not so settled" [emphasis supplied]).  A state may settle a PRP's CERCLA liability, assuming it has been delegated that authority to do so, by entering into an administrative settlement (monetary settlement pursuant to section 122(g) or (h)) or a judicially approved settlement (cleanup settlement pursuant to section 122(d)(1)(A)).

In the instant case, this Court must determine whether Grace has settled its CERCLA liability to New York State, or whether it has settled only its liability under state law.  For the reasons set forth below, this Court concludes that it is the latter.

2.      **The 1984 Consent Order**

In its Amended Complaint, Grace alleges that, in 1984, it entered into an Administrative Consent Order with the DEC and that,  "[b]ecause it was the current owner of the Brewer Road Site, Grace was required under the Consent Order to conduct a remedial investigation/feasibility study . . . to examine the environmental conditions at the Site and evaluate various remedial alternatives for the cleanup."  (Docket No. 38, ¶ 11). In its Record of Decision issued in March 1992, the DEC stated that "[i]n 1984, Evans Chemetics[15] voluntarily entered into a Administrative Order on Consent . . . with the NYSDEC for a Phase II Investigation at the Brewer Road site.  The purpose of this investigation was to assess whether the site posed an existing or potential environmental impact, and to evaluate the extent and magnitude of any identified contamination."  (P. Ex. 386, p. 2).

The foregoing characterizations of the 1984 Consent Order do not suggest that the DEC was operating pursuant to a cooperative agreement or contract with the EPA or that Grace entered into an administrative settlement that "resolved its [CERCLA] liability to the United States or a State."  Nor has the Court been presented with any proof that such a settlement occurred in 1984.  The Court has taken the time to review the hundreds of exhibits proffered by Grace in two summary judgment motions, at trial and in post-trial

---

[15]  Evans Chemetics ("ECI") was purchased by Grace in 1978.

submissions.  The 1984 Consent Order is not among them.

Grace's failure, throughout these proceedings, to cite to what it now purports is the correct statutory basis for relief is not fatal to its contribution claim.  However, its failure at any time during these proceedings to produce the document that allegedly creates its right to contribution is.  Accordingly, this Court finds that Grace is not entitled to maintain a CERCLA contribution action against Zotos based on the 1984 Consent Order.

3.    **The 1988 Consent Order**

Grace did introduce the 1988 Consent Order, both on summary judgment and at trial  (Docket No. 91, Ex. 72; P. Ex. 384), and now argues that this Order constitutes an <u>administratively</u> approved settlement within the meaning of CERCLA by which Grace resolved its liability to the State of New York.  This argument alone is fatal to Grace's claim.  To constitute an effective settlement for site cleanup under section 122, the settlement must be <u>judicially</u> approved—*i.e.*, entered as a consent decree in the appropriate United States district court.

Moreover, a review of the 1988 Consent Order makes clear that Grace merely settled its liability under New York's own environmental laws relating to the investigation and cleanup of inactive hazardous waste sites.  The 1988 Consent Order provides, in pertinent part, as follows:

> 1.   The New York State Department of Environmental Conservation . . . is responsible for the enforcement of Article 27, Title 13 of the [NYS] Environmental Conservation Law (the "ECL") entitled "Inactive Hazardous Waste Disposal Sites."

> * * * *

4.      The [DEC] has determined that the [Brewer Road] Site is an inactive hazardous waste disposal site, as that term is defined in ECL Section 27-1301(2) . . ..

5.      The [DEC] and [Grace] acknowledge that the goals of this Order shall be that [Grace] shall develop and implement a remedial investigation, feasibility study, and, if necessary, a remedial program for this Site, subject to the approval of the [DEC] and implement such program within the time limits specified hereinafter . . ..

* * * *

XI.      . . . In the event that the [DEC] shall not be satisfied with the quality and completeness of construction, the [DEC] may take any action and pursue any remedy to which it may be entitled by law.

If the [DEC] acknowledges that the implementation is complete and in accordance with the Approved Remedial Design, then . . . such acknowledgment shall constitute a full and complete satisfaction and release of each and every claim, demand, remedy or action whatsoever against Respondent, its officers and directors, which the Department has or may have as of the date of such acknowledgment pursuant to Article 27, Title 13, of the ECL relative to or arising from the disposal of hazardous or industrial waste at the Site.

* * * *

XXV.      The failure of [Grace] to comply with any provision of this Order shall constitute a default and a failure to perform an obligation under this Order and under the ECL.

The 1988 Consent Order does not state that the DEC was exercising any authority under CERCLA, does not indicate that the EPA concurred with the remedy selected and does not provide a release as to any CERCLA claims.  In fact, the 1988 Consent Order makes no mention of CERCLA at all.[16]

Just as a party must be sued under CERCLA before it can maintain a section

---

[16]   Nor has the EPA placed the Brewer Road Site on its National Priorities List under 40 CFR Part 300, Appendix B.

113(f)(1) contribution claim, it must settle CERCLA liability before it can maintain a claim

under section 113(f)(3). <u>General Time Corp. v. Bulk Materials, Inc.</u>, 826 F. Supp. 471, 476

(M.D. Ga. 1993) ("the Court does not believe Congress intended for settlements effected

under a state's environmental statute to confer CERCLA contribution [rights]"); <u>Laidlaw</u>

<u>Waste System, Inc. v. Mallinckrodt</u>, 925 F. Supp. 624, 622-23 (E.D. Mo. 1996) (consent

order between State of Illinois and defendants that did not mention or implicate CERCLA

did not protect them from potential liability under CERCLA).[17]

 Because the 1988 Consent Order resolves only Grace's liability to New York State

under state law, Grace cannot maintain a CERCLA contribution action against Zotos.[18]

## C. State Law Contribution

###  1. <u>Jurisdiction over Grace's State Law Contribution Claim</u>

 Grace's CERCLA claim is the only federal claim in the Amended Complaint and,

therefore, is the only source of this Court's jurisdiction under 28 U.S.C. § 1331.  In its

Amended Complaint, Grace  asserts that this Court has subject matter jurisdiction over its

---

[17]  Grace's reliance on <u>Bedford Affiliates v. Sills</u>, 156 F.3d 416 (2d Cir. 1998) is misplaced.  That case involved a cost recovery and contribution action pursuant to sections 107(a) and 113(f)(1), neither of which are at issue here.  The Second Circuit's general discussion of sections 113(f)(2) and 113(f)(3)(B) relates solely to its consideration of CERCLA preemption.

 This Court also finds <u>Fireman's Fund Ins. Co. v. City of Lodi</u>, 296 F. Supp. 2d 1197, 1210-1212 (E.D. Cal. 2003), cited by Grace, to be unpersuasive.  That decision did conclude that a cooperative agreement between Lodi and California's Department of Toxic Substance Control was "an 'administrative settlement' within the meaning of CERCLA section 113(f)(3)(B)."  However, every decision the Court relied upon in its analysis involved litigation by, an express delegation of authority from, or a settlement with the EPA.  The <u>Lodi</u> decision does not provide any rationale for concluding that a CERCLA settlement exists <u>absent</u> any of those circumstances.

[18]  Grace suggests that this result weakens the Congressional intent of encouraging private party settlements and cleanups.  However, CERCLA's language as to the availability of contribution is clear, and it is not this Court's role to substitute its judgment for that of Congress with regard to the effectiveness of CERCLA's contribution provisions.

state law contribution claim pursuant to 28 U.S.C. § 1332 and that supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.  (Docket No. 38, ¶ 3).[19]

Zotos argues that: (1) there is no diversity jurisdiction because its principal place of business is Connecticut, the same state in which Grace is incorporated; and (2) absent any surviving federal claim, this Court should decline to exercise supplemental jurisdiction over Grace's state law claim.  Grace does not contest, and apparently concedes, that there is no diversity of citizenship between it and Zotos.  Thus, the only question remaining is whether this Court should exercise supplemental jurisdiction over Grace's state law contribution claim.

Although a district court <u>may</u> decline to exercise supplemental jurisdiction where, as here, it has dismissed all claims over which it has original jurisdiction, the decision to do so is left to the court's discretion.  28 U.S.C. § 1367(c).  In general, "[i]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  <u>First Capital Asset Mgmt, Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 183 (2d Cir. 2004) (citation omitted).  "If, however, the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money <u>in preparing the dependent claims</u>, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.'"  <u>Purgess v. Sharrock</u>, 33 F.R.D. 134, 138 (2d Cir. 1994) (<i>quoting</i> 28 U.S.C.A. § 1367, Practice Commentary (1993) at 835) [emphasis supplied].

---

[19]  Although Grace expressly pleaded a state law claim, it did not advance any arguments at trial or in post-trial briefing relative to state law contribution.  Grace has "revived" its state law claim in its post-<u>Cooper</u> briefing.

Grace argues the proof relative to state law contribution is the same as for a CERCLA contribution claim and urges that it would be a waste of judicial resources to require the parties to retry the same liability issues that were presented at trial here before a different tribunal.  While Zotos contends that the evidence needed to prove CERCLA contribution is distinct from the evidence required to prove state law contribution, it does not explain the purported distinction or provide any supporting authority.  This Court will therefore consider Grace's claim that it is entitled to contribution pursuant to New York's common law and C.P.L.R. § 1401.

## 2.    State Law Contribution Claims under CERCLA

Section 1401 of the New York Civil Practice Law and Rules[20] states, in relevant part, as follows:

> Except as provided in sections 15-108 and 18-201of the general obligations law, . . . two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

"A cause of action for contribution may be asserted in a separate action or by cross-claim, counterclaim or third-party claim in a pending action."  N.Y. C.P.L.R. § 1403. However, "a tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."  N.Y. GEN. OBLIG. LAW § 15-108.

Because contribution is a derivative claim, a party seeking contribution must be able to make out all of the essential elements of an underlying cause of action against the

_____

[20]   Grace indicates that the analysis of a common law contribution claim is identical to that of a statutory claim under the C.P.L.R.  Accordingly, this Court's analysis will refer only to the C.P.L.R.

proposed contributor.  <u>Calcutti v. SBU, Inc.</u>, 273 F. Supp. 2d 488, 497 (S.D.N.Y. 2003) (quotation and citation omitted).  Grace contends that Zotos' liability as an "arranger" within the meaning of CERCLA section 107(a)(3) is the underlying theory upon which its state law contribution claim rests.  According to Grace, it has sustained its burden of proof as to Zotos' arranger status at trial and is therefore entitled to recover against Zotos for the response costs it incurred in excess of its equitable share.[21]

Zotos contends that Grace cannot maintain a state law contribution claim against it because: (1) Grace's claim is not based on any predicate tort liability and merely seeks economic recovery; (2) there is no underlying action or judgment against Grace for the liability for which it seeks contribution; and (3) the right of contribution under state law cannot flow from a federal statute.  This Court need only consider whether Grace can obtain state law contribution based upon Zotos' arranger liability under CERCLA.[22]

"Many courts have held that the existence, scope and limitations of a right of contribution under a federal statute are governed by federal law."  <u>LNC Investments, Inc.</u>

---

[21]   In short, the predicate for Grace's state law contribution claim is CERCLA.  To succeed on a CERCLA claim, a plaintiff must establish the following five elements: (i) the site at issue is a "facility" under CERCLA, (ii) there has been a release of one or more hazardous substances at that site, (iii) the release caused the plaintiff to incur response costs, (iv) the costs incurred by the plaintiff were necessary and consistent with the National Contingency Plan (NCP) under CERCLA as administered by the EPA, and (v) the defendant falls within one of the four categories of persons, including "arranger," liable for the costs of remedial action.  <u>United States v. Alcan Aluminum Corp.</u>, 990 F.2d 711, 719-20 (2d Cir. 1993) (citations omitted); <u>Mainline Contracting Corp. v. Chopra-Lee, Inc.</u>, 109 F.Supp.2d 110, 117 (W.D.N.Y. 2000).

In this case, there is no dispute as to the existence of the first, second and third elements. (Docket No. 136, ¶¶ 2-4).  In addition, there is no dispute as to the fact that at least some of Grace's response costs were necessary and consistent with the NCP.  (<u>Id.</u>, ¶5).  Thus, if CERCLA liability can form the basis for a state law contribution claim—and Zotos argues otherwise— Grace need only prove the fifth element.

[22]   Although Grace seeks to frame the question as one of Zotos' <u>liability</u>, the fundamental inquiry here is whether Grace has a <u>right</u> to contribution.

v. First Fidelity Bank, 935 F. Supp. 1333, 1340 (S.D.N.Y. 1996) (citations omitted).  Thus, in general, the source of a state law contribution claim must be an obligation imposed by state, rather than federal, law.   *Id*. at 1349; *see,* Norwest Airlines, Inc. v. Transport Workers Union of Am., 451 U.S. 77, 97 n.38, 101 S. Ct. 1571, 67 L. Ed. 2d 750  (1981) ("federal courts, including this Court, have recognized a right to contribution under state law in cases in which state law supplied the appropriate rule of decision"); Herman v. RST Security Services, Inc., 172 F.3d 132, 144 (2d Cir. 1999) (holding that the FLSA's comprehensive remedial scheme preempted the prosecution of FLSA-based contribution claims under New York law and, further, that state law contribution claims must be predicated on a state law rule of decision).

This Court can see no reason to deviate from the general principal here.  CERCLA was amended in 1986 to, among other things, expressly set forth the scope of a private party's contribution rights.  *See* 99 Cong. House Report 253 (1985), at *18 (the new contribution subsection clarifies and emphasizes "that persons who settle with the EPA (and who are therefore not sued), as well as defendants in CERCLA actions, have a right to seek contribution from other potentially responsible parties") [emphasis supplied]. CERCLA has a comprehensive remedial scheme which provides for contribution in specific circumstances.  Such an express statement of rights "strongly counsels against judicially engrafting additional remedies."  Herman, 172 F.3d at 144; *see also*, Bedford Affiliates v. Sills, 156 F.3d 416, 427 (2d Cir. 1998) (discussing CERCLA section 113 and concluding that state law restitution and indemnification actions would bypass this carefully crafted statutory settlement scheme, thereby creating a conflict between CERCLA and state law);

Lehman Bros., Inc. v. Wu, 294 F. Supp. 2d 504, 505 n.1 (S.D.N.Y. 2003) (holding that plaintiff could not premise state law contribution claim on federal Copyright Act "because whether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law") (internal quotation and citation omitted)).

In sum, CERCLA does not provide a right of contribution to parties such as Grace—i.e., parties who have not been sued under CERCLA and who have not entered into an administrative or judicially approved settlement of their CERCLA liability.  Grace has not identified any state law under which Zotos is liable, in tort or otherwise, for contamination at the Brewer Road Site.  Where Grace seeks to recover based on Zotos' CERCLA liability, it is bound by the limitations on contribution actions imposed by CERCLA.  Grace cannot circumvent those express limitations by seeking CERCLA-based contribution under New York's contribution statute.

Grace argues that, following the Supreme Court's decision in Cooper, CERCLA no longer preempts state law contribution claims that are premised on a defendant's CERCLA liability.  (Docket No. 202, n.9).[23]  Grace does not point to any language in Cooper that would support such a conclusion, and this Court's reading of Cooper is to the contrary.

As already noted, Congress has provided two avenues by which a private party,

---

[23]  Zotos had previously moved for summary judgment with respect to Grace's state law contribution claim based on preemption.  (Docket No. 72).  At that time, Grace argued that Zotos' motion should be denied because it had not identified any "actual conflict" between CERCLA's settlement scheme and Grace's contribution claims, and because Grace was not seeking a double recovery. (Docket No. 85, pp. 23-25).  This Court held that Grace's state law contribution claim was not preempted insofar as it sought recovery that was not based on CERCLA and was not in conflict with or duplicative of CERCLA's contribution provisions.  (Docket No. 108, p. 20).  Grace has now confirmed that its state law contribution claim is based solely on Zotos' liability as a potentially responsible party under CERCLA section 107(a)(3).  Accordingly, the conflict preemption analysis set forth in Bedford Affiliates is applicable to Grace's claim.

such as Grace, can seek contribution from PRPs under CERCLA: (1) during or following any civil action under section 106 or 107(a), 42 U.S.C. § 9613(f)(1); or (2) following an administrative or judicially approved settlement of its CERCLA liability, 42 U.S.C. § 113(f)(3)(B).  The Supreme Court expressly stated in Cooper that: "[t]here is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions."  125 S. Ct. at 583.  The Court went on to explain that the savings clause of section 113(f)(1)[24] does not itself establish a cause of action, nor authorize CERCLA contribution actions outside those specified in the statute, nor specify what causes of action for contribution, if any, exists outside of section 113(f).  Id. at 584.

Thus, the most that can be garnered from section 113's savings clause is that, to the extent Zotos is found liable under some other federal law or a state law with respect to contamination at the Brewer Road Site, CERCLA does not completely preempt the pursuit of non-CERCLA remedies.  Indeed, CERCLA expressly disclaimed an intent to preempt state tort liability for the release of hazardous substances:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.  The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

---

[24]   The final sentence of section 113(f)(1) provides: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title."

42 U.S.C. 9652(d) [emphasis supplied].

Federal courts have construed CERCLA's savings clauses in accordance with their plain meaning and held that they preserve a party's rights "arising under" state law, including state law-based claims of contribution, so long as those claims are not duplicative of or in conflict with CERCLA.  *See generally*, <u>Southeast Texas Envtl., L.L.C. v. BP Amoco Chem. Co.</u>, 392 F. Supp. 2d 853, 864-66 (S.D. Tex. 2004); <u>MSOF v. Exxon Corp.</u>, 295 F.3d 485 (5th Cir. 2002) (where defendant is potentially liable under <u>both</u> CERCLA and Louisiana causes of action in negligence and strict liability, plaintiffs are free to pursue their claims under state law rather than CERCLA); <u>Edward Hines Lumber Co. v. Vulcan Materials Co.</u>, 685 F. Supp. 651, 658 (N.D. Ill.  1988) (CERCLA does not preempt state law remedies to recover the costs of site cleanup from parties who are not potentially liable under CERCLA, but are potentially liable under state law).

This district's decisions are in accord.  For example, in <u>Volunteers of Am. of Western N.Y. v. Heinrich</u>, 90 F. Supp. 2d 252 (W.D.N.Y. 2000), the plaintiff property owner asserted claims under CERCLA, RCRA,[25] the New York Navigation Law, common law negligence, common law strict liability, common law public nuisance,  indemnification and contribution relating to costs incurred pursuant to the New York State Superfund Law, common law indemnification and equitable distribution. *Id.* at 256.  The defendants moved to dismiss all of the state law claims on the basis of preemption.  In response, the plaintiff argued that certain damages, such as the clean-up costs of petroleum spills, are not covered by CERCLA, leaving state law as its only avenue for recovery.  *Id.* at 257-58.

---

[25]  The Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*

Judge Telesca agreed with the plaintiff and denied the defendants' motion "to the extent that plaintiff's common law causes of action seek recovery for damages that are different than the damages [for which defendants are potentially liable] under CERCLA." *Id*. at 258.

In United States v. Hooker Chem. and Plastics Corp., 739 F. Supp. 125 (W.D.N.Y. 1990), one defendant cross-claimed against another, a county, for CERCLA contribution and also for C.P.L.R. § 1401 contribution based on the county's negligent performance under state law.  *Id*. at 126-27.  The county argued that it could not be held liable for contribution under federal or state law because it was not a PRP under CERCLA and CERCLA preempted any state law claims against it.  *Id*. at 127-28.  While Judge Curtin agreed that the county was not a PRP, and therefore could not be liable for CERCLA contribution, he disagreed that the state law-based contribution claim was preempted. Citing 42 U.S.C. §§ 9607(e)(2) and 9652(d), the Court determined that those savings provisions "'preserve[ ] actions not provided by CERCLA, if authority for these actions otherwise exists.'" *Id*. at 129 (*quoting* United States v. New Castle County, 642 F. Supp. 1258, 1265 (D. Del. 1986) (emphasis omitted)).

The scenario presented by Grace is quite different.  Grace urges that Zotos is strictly liable for environmental damage at the Brewer Road Site as a PRP under CERCLA, but does not assert any state law basis for liability.  As already determined, Grace cannot obtain CERCLA contribution from Zotos because it does not meet the prerequisites of section 113(f)(1) or 113(f)(3)(B).  Grace now argues that it can obtain contribution under C.P.L.R. § 1401 predicated solely on Zotos' CERCLA liability.

A similar argument was soundly rejected by the Seventh Circuit in PMC, Inc. v.

Sherwin-Williams Co., 151 F.3d 610 (7th Cir. 1998), and this Court sees no reason to deviate from that decision, which is consistent with the conflict preemption analysis previously employed in this Circuit. In PMC, there was no question that both the plaintiff and defendant were PRPs liable under CERCLA. Id. at 613. However, the plaintiff was denied contribution under section 113(f)(1) because it failed to submit its proposed cleanup method for public comment as required by the NCP. Id. at 616-17. After denying the plaintiff CERCLA contribution, the district court went on to award it contribution under the Illinois Contribution Act. The Seventh Circuit reversed, noting CERCLA's express limitations on the right of contribution and rejecting the plaintiff's argument that CERCLA's savings clause permitted it to utilize the state's contribution provisions to obtain contribution predicated on CERCLA liability:

> A savings clause is not intended to allow specific provisions of the statute that contains it to be nullified. CERCLA's savings clause must not be used to gut provisions of CERCLA. The purpose of a savings clause is merely to nix an inference that the statute in which it appears is intended to be the exclusive remedy for harms caused by the violation of the statute. . . . The passage of federal environmental laws was not intended to wipe out the common law of nuisance.

Id. at 618 (internal citations omitted). In short, a state law contribution claim cannot undermine the statutory limitations on a right to contribution under CERCLA.

This Court finds that, irrespective of Zotos' liability under CERCLA, Grace does not have a right to CERCLA-based contribution. Contrary to Grace's unsupported argument, there is nothing in Cooper that alters the preemption analysis previously employed in this Circuit and elsewhere.

## IV.  SUMMARY

Grace is not entitled to an award of contribution from Zotos pursuant to CERCLA section 113(f), 42 U.S.C. § 9613(f).  (Docket No. 38, Count I).

Grace is not entitled to an award of contribution from Zotos pursuant to N.Y. C.P.L.R. § 1401 and common law.  (Docket No. 38, Count II).

Grace is not entitled to a declaratory judgment defining Zotos' liability to Grace pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 9613(g)(2).

## ORDERS

IT HEREBY IS ORDERED that the Clerk of the Court shall enter a Judgment in favor of Defendant Zotos International, Inc., consistent with this Decision and Order, pursuant to Rules 52(a) and 58 of the Federal Rules of Civil Procedure.


SO ORDERED.

Dated:        May 3, 2005
              Buffalo, New York


                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                       United States District Judge

25